United States District Court
Southern District of Texas
ENTERED
November 10, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DT AMERICA CORPORATION, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-25-3720 |
| | § | |
| JULIEN LESECH, INGRID BARRON, | § | |
| SEAN DULLE, APROJECTS USA, LLC, | § | |
| PROJECT SERVICES USA, LLC, | § | |
| YOERI TORFS, and CAMPY BV, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, DT America Corporation ("Plaintiff" or "DTA"), brings this action against defendants, Julien Lesech ("Lesech"), Ingrid Barron ("Barron"), Sean Dulle ("Dulle"), Aprojects USA, LLC ("Aprojects"), Project Services USA, LLC ("Project Services"), Yoeri Torfs ("Torfs"), and Campy BV ("Campy"). Pending before the court is Defendant Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("Campy's Motion to Dismiss") (Docket Entry No. 127). Plaintiff DTA responds with DT America Corporation's Opposition to Defendant Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("DTA's Opposition to Campy's Motion to Dismiss")(Docket Entry No. 144), in which DTA seeks an order denying Campy's Motion to Dismiss, permitting it to substitute or join Campy's successor Great World BV ("Great World"), amend its pleading accordingly, and if necessary, engage in targeted

jurisdictional discovery before determining whether Campy and/or its successor is subject to this court's personal jurisdiction.[1] Also pending is Defendant Campy BV's Reply in Support of Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("Campy's Reply") (Docket Entry No. 149). For the reasons stated below the Campy's Motion to Dismiss will be denied without prejudice, and DTA will be granted leave to file an amended pleading to add Great World and conduct jurisdictional discovery.

## I. Background

### A. Factual Allegations[2]

DTA is a wholly owned American subsidiary of DT Project, which belongs to the DIMOTRANS Group ("Dimotrans"), a multinational logistics and freight forwarding conglomerate headquartered in France.[3] Defendant Lesech is a French national who began his career as Finance Manager for Dimotrans' China operations,

---

[1]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, pp. 7-10. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]This section summarizes factual allegations made in Plaintiff's First Amended Complaint for Injunctive Relief and Damages ("FAC"), Docket Entry No. 104, pp. 4-32 ¶¶ 14-96. These allegations are accepted as true for purposes of analyzing Campy's Motion to Dismiss.

[3]Id. at 4 ¶ 14.

relocated to Canada to established Dimotrans' North American network, which in turn led to the creation of DTA and Lesech's relocation to Atlanta, Georgia.[4] In 2015 Lesech was elected as a director of DTA, and in 2017 he promoted to the position of DTA's Vice-President.[5] Tasked with growing DTA's business in the United States, in 2018 Lesech recruited and hired defendant Dulle to serve as Business Development Manager of a DTA office in Charleston, South Carolina, where he later became Branch Manger.[6] Dulle's employment was conditioned on acceptance of restrictive covenants.[7] In 2023 Lesech hired defendant Barron to serve as Branch Manager for a DTA office in Houston, Texas.[8] Barron's employment with DTA was conditioned on assent to a Restrictive Covenant Agreement with a variety of confidentiality, non-disclosure, and non-solicitation provisions.[9] DTA alleges that while employed by DTA, Lesech, Dulle, and Barron conspired with each other and with Defendants Torf and Campy to move DTA's business and employees to competitors, Aprojects and/or Project Services, by misappropriating DTA's trade

---

[4]Id. at 5 ¶¶ 18-20.

[5]Id. at 6 ¶ 21.

[6]Id. ¶ 24.

[7]Id. at 7 ¶¶ 25-26.

[8]Id. ¶ 27.

[9]Id. at 8-9 ¶¶ 29-31.

secrets and confidential information.[10] DTA also alleges that Lesech, Dulle, and Barron, affirmatively acted to conceal their illegal activities.[11]

## B. Procedural Background

DTA filed an Original Complaint for Injunctive Relief and Damages (Docket Entry No. 1) on August 11, 2025, asserting claims for breach of contract against Barron, for breach of fiduciary duty against Lesech, Dulle, and Barron, and for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., civil conspiracy, tortious interference with existing contract, tortious interference with prospective economic advantage, and aiding and abetting breach of fiduciary duty, against Lesech, Dulle, Barron, Aprojects, and Project Services.[12]

At a hearing held on October 15, 2025, the court consolidated DTA's request for a preliminary injunction with trial on the merits,[13] and on October 23, 2025, the court entered a Docket Control Order (Docket Entry No. 91) setting the deadline for filing dispositive motions on August 1, 2026, and the deadline for

---

[10]Id. at 12-29 ¶¶ 38-88.

[11]Id. at 29-32 ¶¶ 89-96.

[12]Plaintiff's Original Complaint for Injunctive Relief and Damages, Docket Entry No. 1 (redacted) and 8 (sealed), pp. 30-39 ¶¶ 89-139.

[13]Hearing Minutes and Order, Docket Entry No. 87.

completion of discovery on August 14, 2026. On April 21, 2026, DTA filed Plaintiff DT America Corporation's Motion for Leave to File Plaintiff's First Amended Complaint (Docket Entry No. 96), seeking leave to add Torfs and Campy as defendants because Torf's deposition revealed that they are responsible for conduct alleged in this action.

On May 26, 2026, the court entered an Order Granting Plaintiff DT America Corporation's Motion for Leave to File Plaintiff's First Amended Complaint (Docket Entry No. 103). In addition to the claims asserted in its Original Complaint, DTA's FAC asserts claims against Campy and Torfs for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq., civil conspiracy, tortious interference with existing contract, tortious interference with prospective economic advantage, and aiding and abetting breach of fiduciary duty.[14] DTA alleges that Torfs is an individual residing in New York,[15] and that Campy is a foreign company organized under the laws of Belgium that may be served in Antwerp, Belgium, pursuant to the Hague Convention on Service Abroad of Judicial and Extrajudicial Documents ("Hague Convention").[16]

On August 7, 2026, DTA filed a return of service on Campy, which includes a Certificate of Service - Hague Convention 1965 (Docket Entry No. 121).

---

[14]FAC, Docket Entry No. 104, pp. 32-37, ¶¶ 97-129, p. 39 ¶¶ 134-40.

[15]Id. at 2 ¶ 8.

[16]Id. at 3 ¶ 11.

On August 17, 2026, Campy filed the pending Motion to Dismiss arguing that DTA's claims against it should be dismissed under Rule 12(b)(2) for lack of personal jurisdiction, Rule 12(b)(5) for insufficient service, and Rule 12(b)(6) for lack of capacity to be sued. Attached to Campy's motion is the declaration of Frédéric Verspreeuwen, Campy's Belgian counsel, stating that days before the court granted DTA's motion to amend Campy was absorbed through a series of non-public and undisclosed mergers into its ultimate parent, Great World BV ("Great World") and, therefore, ceased to exist before it was added to this action. Campy also argues that the service attempted on it in July of 2026 was ineffective because the summons and FAC were not translated into the Dutch language as required by Belgian law.[17] Campy supports that argument with the Declaration of Dries Holvoet, Global Chief Financial & Transformation Officer of Great World, stating that the certificate of service delivered to Campy's former address was in the Dutch language, but that the other documents were all in English.[18]

---

[17]Campy's Motion to Dismiss, Docket Entry No. 127, p. 12 (citing Declaration of Frédéric Verspreeuwen in Support of Campy B.V.'s Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("Verspreeuwen Declaration"), Docket Entry No. 130, pp. 3-5 ¶¶ 21-34).

[18]Id. at 12-13, 32-33 (citing Declaration of Dries Holvoet in Support of Campy B.V.'s Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("Holvoet Declaration"), Docket Entry No. 128, p. 1).

On September 8, 2026, DTA filed its opposition to Campy's motion arguing that Campy's motion should be denied or, alternatively, that the court should

> (a) permit Great World to be substituted or joined as Campy's successor, (b) grant [DTA] leave to amend its pleading accordingly, and if necessary, (c) permit targeted jurisdictional discovery before determining whether Campy and/or its corporate successor Great World is subject to this Court's [personal] jurisdiction.[19]

On September 15, 2026, Campy replied (Docket Entry No. 149).

## II. Analysis

### A. DTA's Defective Service on Campy Does Not Warrant Dismissal

Campy argues that the claims asserted against it should be dismissed under Rule 12(b)(5) because DTA failed to effect valid service under Federal Rule of Civil Procedure 4(f), the Hague Convention, and Belgian law.[20] Citing Volkswagenwerk Aktiengenesllschaft v. Schlunk, 108 S. Ct. 2104 (1988), for holding that Hague Convention compliance is mandatory in all cases to which it applies,[21] and citing the Verspreeuwen and Holvoet declarations, Campy argues that "DTA cannot meet its burden of establishing valid service because the documents served on Campy did not comply with

---

[19]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, p. 10.

[20]Campy's Motion to Dismiss, Docket Entry No. 127, pp. 9-10, 30-33.

[21]Id. at 31.

the language requirements of Belgian law."[22] In pertinent part Verspreeuwen states that "Belgium has formally declared that judicial documents served pursuant to Article 5(1)(a) or (b) must be drafted in, or translated into, one of the official languages of the place where service is to be effected (see Appendix 9),"[23] "[t]he language is determined on the basis of the addressee's location and, more specifically, by reference to the postal code,"[24] and because "service was attempted in Antwerp (postal code 2000) . . . a judicial document served through the Belgian Central Authority pursuant to Article 5 would, in principle, have to be translated into Dutch."[25] Verspreeuwen states that "Belgium has not objected to the use of Article 10 of the Hague Convention, which allows service to be effected directly through a local judicial officer (thus bypassing the central authority). . . [DTA] appears to have relied on this method of service."[26] Verspreeuwen also states that

---

[22]Id. at 32 (citing Verspreeuwen Declaration, Docket Entry No. 130, pp. 6-7 ¶¶ 41-43). See also Campy's Reply, Docket Entry No. 149, pp. 13-14 (citing Second Declaration of Frédéric Verspreeuwen in Support of Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim) ("Second Verspreeuwen Declaration"), Docket Entry No. 150, pp. 2-5 ¶¶ 14-26).

[23]"Verspreeuwen Declaration, Docket Entry No. 130, p. 6 ¶ 36.

[24]Id. ¶ 37.

[25]Id. ¶ 38.

[26]Id. ¶ 39.

> [a]side from the requirements under Article 5 of the Hague Convention, under Belgian law, the applicable language requirements are set out in the Act of June 5, 1935 on the Use of Languages in Judicial Matters. Pursuant to Article 38 of that Act, the language requirement is determined by the linguistic region in which service is effected (see Appendix 10). The absence of a translation, or the use of a translation that does not correspond to the original document on essential points and thereby infringes the rights of the defense, renders the entire procedural act null and void (see Appendix 11).
>
> Campy BV and Great World BV are both located and registered in the Dutch speaking linguistic region.[27]
>
> DTA responds that it
>
> engaged a Belgian judicial officer, caused the summons and [FAC] to be delivered at Campy's registered address — which is also Great World's registered address — and received certificates documenting that service. To the extent that the Court determines that Belgian law required additional translation or other formalities, the appropriate remedy is to allow [DTA] to cure any technical deficiency.[28]

Asserting that "Campy was properly served and received actual notice of this lawsuit pursuant to the requirements of the Hague Convention,"[29] and that Campy voluntarily accepted service after being informed of its right to refuse service because the documents were drafted in English,[30] DTA argues that "Campy's service of

---

[27]Id. at 6-7 ¶¶ 41-42.

[28]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, pp. 9-10.

[29]Id. at 20-21.

[30]Id. at 21-22 (citing Declaration of A. Madison Dini in Support of Plaintiff DT America Corporation's Opposition to Defendant Campy BV's Motion to Dismiss for Lack of Personal (continued...)

process argument cannot be a basis for dismissal with prejudice,"[31] because "the alleged deficiency (service of a copy of the complaint in Dutch) can be readily cured."[32] DTA explains that

> as Campy now argues that it ceased to exist and that Great World is the entity possessing its liabilities, . . . [i]f the Court determines that service was deficient, [DTA] respectfully requests leave to perfect service upon the appropriate successor entity rather than dismissal.[33]

Citing the Second Verspreeuwen Declaration, and asserting that DTA "conflates acceptance of service with acceptance of English as the language of the proceedings,"[34] Campy replies that

> DTA relies on the "Certificate of Service or Non-Service of Documents" box ticked in "Form K," a standardized certificate used under European Service Regulation (Regulation EU) 2020/1784) and attached to the bailiff's writ during DTA's attempted service efforts. Dkt. 146. Exhibit 12; Second Verspreeuwen Decl., ¶¶ 16-17. However, the European Service Regulation does not govern service carried out pursuant to the Hague Convention of 1965, and therefore does not establish compliance with the Hague Convention's language requirements or any exception to Belgian laws. Second Verspreeuwen Decl., ¶ 17. At most Form K reflects that the recipient did not refuse delivery of the documents. It does not establish that Campy was properly served or that it agreed to litigate in English. Under the Hague Convention, the relevant document for those points is a Certificate of Attestation pursuant to Article 6, not a Form K. Id.,

---

[30](...continued)
Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("Dini Declaration"), Docket Entry No. 146, pp. 2-3 ¶ 11).

[31]Id. at 9.

[32]Id. at 21.

[33]Id. at 22.

[34]Campy's Reply, Docket Entry No. 149, p. 13.

> ¶ 18. Therefore the mere ticking of a box on Form K cannot establish an exception to Belgian translation requirements, the validity of service carried out under the Hague Service Convention of 1965, or the acceptance of English as the language of the proceeding within the meaning of Article 38, 8º of the Act of 15 June 1935. Id. ¶¶ 19-20.[35]

1. Standard of Review

Federal Rule of Civil Procedure 12(b)(5) permits a motion to dismiss for "insufficient service of process." Fed. R. Civ. P. 12(b)(5). Once service of process is challenged, the serving party bears the burden of proving its validity. Carimi v. Royal Caribbean Cruise Line, Inc., 959 F.2d 1344, 1346 (5th Cir. 1992). Upon finding insufficient service of process, federal courts have broad discretion to dismiss or retain the action. George v. United States Department of Labor, Occupational Safety & Health Administration, 788 F.2d 1115, 1116 (5th Cir. 1986)(per curiam). "Dismissal is not appropriate unless there is no reasonably conceivable means of acquiring jurisdiction over the person of a defendant." Florence v. Buchmeyer, 500 F. Supp. 2d 618, 633 (N.D. Tex. 2007) (citing Stanga v. McCormick Shipping Corp., 268 F.2d 544, 554 (5th Cir. 1959) (a single defective attempt to serve the defendant did not justify dismissal unless there was "no reasonably conceivable means of acquiring jurisdiction over the person of a defendant.")).

---

[35]Id. at 13-14 (citing Second Verspreeuwen Declaration, Docket Entry No. 150, pp. 3-4 ¶¶ 16-20).

2. Applicable Law

Federal Rule of Civil Procedure 4(c) requires plaintiffs to properly serve defendants with a summons and copy of the complaint. Service of process on a "foreign corporation, . . . or other unincorporated association that is subject to suit under a common name," is governed by Rule 4(h). If a foreign corporation or other unincorporated association is to be served abroad, Rule 4(h)(2) provides for service "in any manner prescribed in Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(I)." Fed. R. Civ. P. 4(h)(2). One of the methods of service prescribed in Rule 4(f) is service authorized by the Hague Convention. Fed. R. Civ. P. 4(f)(1). Service in compliance with the Hague Convention is mandatory for all civil or commercial matters where service is to be effected abroad and the destination country is a signatory. Schlunk, 108 S. Ct. at 2108 (citing Hague Convention, Art. 1, 20 U.S.T. at 362, 1969 WL 97765, at *1). "Belgium is a party to the Hague Convention." In re S1 Corporation Securities Litigation, 173 F.Supp.2d 1334, 1344 (N.D. Ga. October 23, 2001).

"The primary means by which service is accomplished under the [Hague] Convention is through a receiving country's 'Central Authority.'" Brockmeyer v. May, 383 F.3d 798, 801 (9th Cir. 2004).

> The Convention affirmatively requires each member country to designate a Central Authority to receive documents from another member country. See Hague Convention, art. 2. The receiving country can impose certain requirements with respect to those documents (for

> example, that they be translated into the language of that country). See id., art. 5. If the documents comply with applicable requirements, the Convention affirmatively requires the Central Authority to effect service in its country. See id., arts. 4&5.

Id. But "[a] state also may consent to methods of service within its boundaries other than a request to its central authority. Arts. 8-11, 19." Schlunk, 108 S. Ct. at 2108. For example Article 10 "address[es] additional methods of service that are permitted by the Convention (unless the receiving state objects)." Water Splash, Inc. v. Menon, 137 S. Ct. 1504, 1508 (2017). Article 10 states that

> [p]rovided the State of destination does not object, the present Convention shall not interfere with – (a) the freedom to send judicial documents, by postal channels, directly to persons abroad, (b) the freedom of judicial officers, officials, or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination, (c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Id. (quoting Hague Convention, Art. 10, 20 U.S.T. at 363). The Supreme Court has held that Article 10 does not affirmatively authorize any other means of service, but instead does not interfere with the freedom to use other means of service if the following two conditions are met: (1) the receiving state has not objected to the method of service used; and (2) the method of service is authorized under otherwise-applicable law. Id. at 1513 (citing Brockmeyer, 383 F.3d at 803-04).

3. Application of the Law to DTA's Allegations

(a) DTA's Attempt to Serve Campy was Insufficient

DTA did not attempt to serve Campy via Belgium's Central Authority under Article 5 of the Hague Convention. Instead, the return of service filed for Campy and DTA's arguments in opposition to Campy's Motion to Dismiss show that the service was attempted by a Belgian judicial officer,[36] a method of service addressed by Article 10(c) of the Hague Convention. DTA argues that service by a Belgian judicial officer was sufficient, but this argument fails because Article 10(c) does not affirmatively authorize service by judicial officer; it merely affirms that the Convention does not interfere with this form of service when it is authorized by the law of a non-objecting signatory state. Water Splash, 137 S. Ct. at 1508 (citing Brockmeyer, 383 F.3d at 804).

While Belgium is a signatory state that has not objected to Article 10, Campy has cited Belgian law that requires judicial documents served in Antwerp, where DTA attempted service, to be served in Dutch absent an agreement to conduct the proceedings in another language. DTA acknowledges that the documents at issue were in English, and fails to cite either an agreement to conduct these proceedings in English or a Belgian law allowing service of documents in English absent an agreement to conduct the proceedings in English. DTA has failed therefore to carry its burden of showing that Campy was properly served in compliance with Article 10(c) of the Hague Convention.

[36]See Return of Service, Docket Entry No. 121. See also Exhibit 12 attached to Dini Declaration, Docket Entry No. 146-12.

(b) Dismissal of the Claims Asserted Against Campy is Not Warranted

A single defective attempt to serve a party does not justify dismissal unless there is "no reasonably conceivable means of acquiring jurisdiction over the person of a defendant." Stanga, 268 F.2d at 554. Because the parties acknowledge that Campy no longer exists and that Great World is the entity that now possesses Campy's liabilities, the court concludes that the claims asserted against Campy should not be dismissed for failure to perfect service because for the reasons stated below in §§ II.B and II.D, DTA's request to amend its pleadings to substitute Great World for Campy and engage in discovery targeted towards personal jurisdiction will be granted.

## B. Personal Jurisdiction

Asserting that before its merger into Great World it was "a Belgian holding company with no offices, employees, property, operations, or business activities in Texas,"[37] Campy argues that it is not subject to this court's personal jurisdiction because it does not possess the requisite minimum contacts with Texas needed to comport with traditional notions of fair play and substantial justice.[38] DTA responds that Campy is subject to personal

[37] Campy's Motion to Dismiss, Docket Entry No. 127, p. 9.

[38] Id. at 9 and 18-19.

jurisdiction in Texas based upon the an alter ego theory "as evidence demonstrates Campy's and the other Entity Defendants' [i.e., Aprojects and Project Services], are intertwined . . . [such that] Campy is the alter ego of [the] Entity Defendants."[39]

1. Standard of Review

A district court may dismiss an action against a defendant when the court lacks personal jurisdiction over that defendant. Fed. R. Civ. P. 12(b)(2). On a motion to dismiss decided without benefit of an evidentiary hearing, the burden is on the plaintiff to establish a prima facie case in support of personal jurisdiction. Johnston v. Multidata Systems International Corp., 523 F.3d 602, 609 (5th Cir. 2008). "When a defendant disputes the factual bases for jurisdiction as [Campy] does here, the court may receive interrogatories, depositions, or 'any combination of the recognized methods of discovery,' to help it resolve the jurisdictional issue." Walk Haydel & Associates, Inc. v. Coastal Power Production Co., 517 F.3d 235, 241 (5th Cir. 2008) (quoting Thompson v. Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)). The court must accept as true all of DTA's uncontroverted allegations and must resolve conflicts in the evidence in DTA's favor. Johnston, 523 F.3d at 609.

[39]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, p. 9.

2. Applicable Law

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with federal due process. Mullins v. TestAmerica, Inc., 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. Id. (citing Johnston, 523 F.3d at 609). See also Schlobohm v. Schapiro, 784 S.W.2d 355, 357 (Tex. 1990) (citing Tex. Civ. Prac. & Rem. Code § 17.042). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed itself of forum state benefits by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. Mullins, 564 F.3d at 398.

"Minimum contacts" can give rise to either general or specific personal jurisdiction. Lewis v. Fresne, 252 F.3d 352, 358 (5th Cir. 2001). General jurisdiction exists for any and all claims when the contacts are "so continuous and systematic as to render [the defendant] essentially at home in the forum State." Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014)(citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011)).

Specific jurisdiction exists if the asserted cause of action "arises out of or relates to the defendant's contacts with the forum." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868, 1872 n. 8 (1984)). The Fifth Circuit has

> articulated a three-step analysis for specific jurisdiction:
>
> (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;
>
> (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and
>
> (3) whether the exercise of personal jurisdiction is fair and reasonable.

McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009), cert. denied, 131 S. Ct. 68 (2010). The touchstone of the minimum contacts inquiry is "whether the defendant's conduct shows that it 'reasonably anticipates being haled into court'" in the forum state. Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 100 S. Ct. 559, 567 (1980)). DTA does not dispute that Campy lacks contacts with Texas needed to establish either general or specific jurisdiction. Instead, DTA argues that the contacts with Texas established by the Entity Defendants, Aprojects and Project Services, may be imputed to Campy because Campy is the alter ego of those defendants.

The Fifth Circuit has recognized that in some cases, the relationship between affiliated entities requires the forum contacts of one entity to be imputed to another for the purpose of personal jurisdiction. See, e.g., Freudensprung v. Offshore Technical Services, Inc., 379 F.3d 327, 346 (5th Cir. 2004); Hargrave v. Fibreboard Corp., 710 F.2d 1154, 1159-60 (5th Cir. 1983). A subsidiary's contacts may be attributed or imputed to the parent for personal jurisdiction purposes where clear evidence shows that the subsidiary is the parent's alter ego or general agent. See Freudensprung, 379 F.3d at 346 (citing Dickson Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999)).

In Hargrave, 710 F.2d at 1154, the Fifth Circuit established factors to be considered in deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary. Id. at 1159. The Fifth Circuit declined to attribute a subsidiary's contacts with the forum state to its parent because "the corporate formalities were scrupulously observed," including "separate bank accounts, accounting and payroll systems, insurance contracts, budgets, and financial records." Id. at 1160. The parent and subsidiary "filed separate tax returns," and "[n]o assets of the corporations were commingled." Id. The Fifth Circuit reached this conclusion even though the parent exercised complete control over the subsidiary's general policy decisions, including selection of product lines, hiring and firing of

officers, and approval of sizable capital investments. Id. The court found that level of control "no more than that appropriate for a sole shareholder of a corporation, and certainly not enough to warrant the extraterritorial exercise of jurisdiction over the shareholder under the Texas [long-arm] statute." Id. at 1161. The Hargrave factors are thus: (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations. See Dickson Marine, 179 F.3d at 339 (applying these Hargrave factors); Freudensprung, 379 F.3d at 346 (same).

3. Application of the Law to the Allegations and Evidence

Citing the Declaration of Yoeri Torfs in Support of Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim ("Torfs Declaration") (Docket Entry No. 129), Campy argues that it "maintained a corporate existence separate and distinct from Aprojects, observed corporate formalities, and did not control

Aprojects' daily operations."[40] Campy asserts that "consistent with their separate corporate identities, Campy and Aprojects do not share a place of incorporation or principal place of business."[41] Campy was organized and headquartered in Belgium,[42] while Aprojects is "a Delaware limited liability company with its principal office in Albany, New York."[43] Asserting that DTA mistakenly alleges that Torfs holds "executive level positions" with Campy, Campy argues that

> Torfs has never held an executive position with Campy. See Torfs Decl., ¶ 2. Mr. Torfs was an indirect shareholder in Campy through Emerald Expeditors. Id. And while Aprojects was a subsidiary of Campy by virtue of Campy's majority ownership of Aprojects' shares, first sixty percent and later ninety percent, that parent-subsidiary relationship does not permit the imputation of Aprojects' Texas contacts to Campy. Id. at ¶ 4.[44]

Relying on the Torfs Declaration Campy also argues that it

---

[40]Campy's Motion to Dismiss, Docket Entry No. 127, p. 24 (citing Torfs' Declaration, Docket Entry No. 129, p. 2 ¶¶ 8-17).

[41]Id.

[42]See Torfs Declaration, Docket Entry No. 129, p. 1 ¶ 3.

[43]Campy's Motion to Dismiss, Docket Entry No. 127, p. 24 (citing Defendants Aprojects USA, LLC's and Project Services USA, LLC's Answer to Plaintiff's Complaint, Docket Entry No. 67, p. 2 ¶ 8, admitting the allegation in ¶ 8 of Plaintiff's Original Complaint for Injunctive Relief and Damages (Docket Entry Nos. 1 and 8) that "Defendant Aprojects USA, LLC is a . . . limited liability company organized under the laws of the State of Delaware with a principal office in Albany, New York").

[44]Id. (citing Torfs' Declaration, Docket Entry No. 129, p. 1 ¶¶ 2, 4).

> maintained its own accounting system separate from Aprojects, maintained its own bank accounts, conducted its own shareholder and director meetings, and filed separate tax returns. Torfs Decl. ¶¶ 14, 16 [M]ost importantly, Campy does not manage the day-to-day operations of Aprojects. Id. ¶ 8. Aprojects operates a shipping and logistics provider and employs its own employees distinct from Campy, which had no employees and which operated as a holding company. Id. Campy did not and does not make operational or business decisions for Aprojects and has never held itself out as Aprojects. Id. ¶¶ 8, 17.[45]

DTA replies that it

> has established a prima facie case for alter ego between Campy and Entity Defendants. First, Campy owned ninety percent of Entity Defendants. Moreover, the corporate chain before the transaction was essentially: Great World ➔ Flaust ➔ Campy ➔ Aprojects ➔ Project Services. Second, Great Works and Campy had the exact same business address and location. Third, Campy and Entity Defendants shared common officers and directors — specifically, Torfs. Torfs was simultaneously operating Entity Defendants and participating in Campy governance. Fourth, it does not appear that corporate formalities were observed as Campy or entities within its holding structure supplied capital for Entity Defendants. Torfs confirmed that profits moved upstream from the U.S. operations to and through Campy, even though Campy was admittedly a mere shell that had no personnel or employees.[46]

DTA argues that its written discovery issued months ago asked the Entity Defendants to identify their corporate parents, affiliates, executive leadership, directors, owners, and organizational structure, but that those requests have not yielded complete

---

[45]Id. at 25 (citing Torfs' Declaration, Docket Entry No. 129, p. 2 ¶¶ 8, 14, 16-17).

[46]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, pp. 19-20.

information regarding the parent entities and their management.[47] Asserting that "Campy and Great World should not be permitted to invoke corporate separateness as an evidentiary shield while its subsidiaries fail to fully produce the records needed to test that attestation,"[48] DTA argues that if the evidence is insufficient for the court to exercise personal jurisdiction over Campy, then the court should allow DTA to conduct jurisdictional discovery.[49]

DTA has failed to produce evidence of the Hargrave factors sufficient to support a finding that the Entity Defendants' contacts with Texas should be imputed to Campy for the purpose of exercising personal jurisdiction. See Dickson Marine, 179 F.3d at 338-39. While Aprojects is almost wholly owned by Campy, the two companies are organized under different laws — Campy under the laws of Belgium and Aprojects under the laws of Delaware, and have different headquarters — Campy in Antwerp, Belgium and Aprojects in Albany, New York. Although there is evidence that Torfs is an officer of Aprojects (CEO), there is no evidence of Campy's officers, and no evidence regarding the identities of the directors of either Aprojects or Campy. Nor is there evidence that Aprojects and Campy failed to observe corporate formalities, or that Campy

---

[47]Id. at 20 (citing Dini Declaration, Docket Entry No. 146, p. 1 ¶ 3 and Exhibits 1 and 2 attached thereto).

[48]Id.

[49]Id.

controlled Aprojects' operations. Nevertheless, the court is persuaded that DTA has made enough of a preliminary showing to grant its request for jurisdictional discovery.

In the FAC DTA alleges that

> Defendant Campy BV is a foreign company organized under the laws of Belgium, which owns, controls and regularly oversees business in the United States, generally, and Houston, Texas, specifically, including through Aprojects and Project Services. Based on discovery taken in the action, [DTA] is informed and believes that Campy BV is the majority owner of Aprojects. Based on deposition testimony provided in the action by Torfs, [DTA] is informed and believes that Campy BV has a central role in the larger "Aprojects" structure and has an equity interest in Project Services. . . [50]

DTA also alleges that "[d]iscovery in the action revealed that Torfs acts in executive level positions for Project Services (its president, according to Torfs), Aprojects (its CEO) and Campy BV."[51]

Campy argues that DTA mistakenly alleges that Torfs holds an executive level positions at Campy and Aprojects, and cites the Torfs Declaration as evidence that he has never held an executive position at Campy. But the Torfs Declaration neither denies that he has ever held an executive position at Campy nor identifies any of Campy's officers. And while Torfs states in ¶ 2 that he "was an indirect shareholder in Campy BV through Emerald Expeditors, which held a 45% ownership interest in Campy BV," that statement

---

[50]FAC, Docket Entry No. 104, p. 3 ¶ 11.

[51]Id. at 12 ¶ 39

conflicts with his statement in ¶ 5 that "Campy BV was absorbed by Flaust N.V., its sole shareholder."[52] This conflict in Torfs' Declaration regarding Campy's shareholders, coupled with the silent merger of Campy first into Flaust and then into Great World in May of 2026 while DTA's motion to amend its pleadings to add Campy as a defendant was pending, and Aprojects' failure to fully respond to DTA's discovery requests regarding its corporate structure, persuade the court that DTA's request for jurisdictional discovery should be granted, and that Campy's Motion to Dismiss for lack of personal jurisdiction should be denied without prejudice. If DTA can obtain evidence through discovery enabling it to establish personal jurisdiction based on its alter ego theory, this court's exercise of personal jurisdiction over Campy would not offend traditional notions of fair play and substantial justice.

## C. Capacity to Be Sued

Campy argues that the claims asserted against it should be dismissed under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted because it lacks legal capacity to be sued under Belgian law.[53] Citing the Declaration of its Belgian counsel, Frédéric Verspreeuwen, Campy

---

[52]Torfs Declaration, Docket Entry No. Docket Entry No. 129, p. 1 ¶¶ 2 and 5.

[53]Campy's Motion to Dismiss, Docket Entry No. 127, p.14.

argues that it lacks legal capacity to be sued because in May of 2026 it was absorbed through mergers into successor legal entities and, therefore, ceased to exist as a separate legal entity under Belgian law before the court granted DTA's motion to amend and before DTA attempted to serve Campy with process in July of 2026.[54] Without disputing that Campy had eased to exist as a separate legal entity under Belgian law in July of 2026 when DTA attempted to serve the summons on Campy, DTA responds that Campy's Rule 12(b)(6) Motion to Dismiss should be denied because Campy's argument that it lacks legal capacity to be sued improperly relies on evidence outside the four corners of the FAC, because Campy had not ceased to exist as a separate legal entity under Belgian law when it was added as a defendant on May 26, 2026, and because Campy's absorption by merger into successor entities did not extinguish substantive liabilities arising from Campy's pre-merger conduct.[55] DTA argues that "the facts provide the Court with ample basis to permit [it] to substitute Great World and amend the complaint to name the proper defendant."[56] The court agrees.

---

[54]Id. at 12, 14-18. See also Campy's Reply, Docket Entry No. 149, pp. 15-19.

[55]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, pp. 14-18.

[56]Id. at 17.

1. Standard of Review

A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam), cert. denied sub nom. Cloud v. United States, 122 S. Ct. 2665 (2002). To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 127 S. Ct. at 1965). When considering a motion to dismiss, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id. Courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC, 594 F.3d 383, 387 (5th Cir. 2010).

2. Applicable Law

A party's capacity to sue or be sued is governed by Rule 9 of the Federal Rules of Civil Procedure. In pertinent part Rule 9 states that

> (a) Capacity or Authority to Sue; Legal Existence.
>
> (1) In General. Except when required to show that the court has jurisdiction, a pleading need not allege:
> (A) a party's capacity to sue or be sued;
>
> (B) a party's authority to sue or be sued in a representative capacity; or
>
> (C) the legal existence of an organized association of persons that is made a party.
>
> (2) Raising Those Issues. To raise any of those issues, a party must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge.

Fed. R. Civ. P. 9(a).

3. Application of the Law to the Allegations

Rule 12(b) does not expressly authorize the dismissal of claim based upon a lack capacity to be sued. Nevertheless, courts in the Fifth Circuit have permitted Rule 12(b)(6) motions arguing lack of capacity when the issue of capacity to be sued "appears on the face of the complaint." See Doe v. Mckesson, 945 F.3d 818, 824 n.2 (5th Cir. 2019), rev'd on other grounds, 141 S. Ct. 48 (2020). See also Ellis v. Clarksdale Public Utilities, No. 4:20-cv-32-DMB-JMV, 2020 WL 6706359, at * 2 (N.D. Miss. November 13, 2020)(citing 5A Charles

Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1294 (3d ed. 2018) ("An effective denial of capacity . . . creates an issue of fact. Such a denial may be made in the responsive pleading or, if the lack of capacity . . . appears on the face of the pleadings or is discernible therefrom, the issue can be raised by a motion to dismiss for failure to state a claim for relief.").

Campy's argument that it lacks the capacity to be sued is based on facts stated in the Verspreeuwen Declaration.[57] The Verspreeuwen Declaration is attached to the Motion to Dismiss but the facts stated therein are neither referenced by the FAC nor central to the claims asserted in the FAC and, therefore, may not be considered by the court at this stage of the litigation. See Lone Star Fund, 594 F.3d at 387. Therefore, Campy's Motion to Dismiss for lack of capacity to be sued will be denied.

## D. DTA's Request for Leave to Amend

In addition to arguing that Campy's Motion to Dismiss should be denied, DTA's opposition to that motion seeks an order permitting it to substitute or join Campy's successor, Great World, amend its pleading accordingly, and if necessary, engage in discovery targeted to the issue of whether the court may exercise personal jurisdiction over Great World.[58] Campy opposes these

[57]See Docket Entry No. 130, pp. 3-5 ¶¶ 21-34.

[58]DTA's Opposition to Campy's Motion to Dismiss, Docket Entry No. 144, pp. 10, 21-22.

requests arguing that "DTA's request to substitute or join Great World does not alter the jurisdictional analysis,"[59] and that additional discovery is not warranted because "DTA offers nothing more than speculation that jurisdictional discovery will uncover facts sufficient to establish personal jurisdiction."[60]

Federal Rule of Civil Procedure 15(a) applies where a plaintiff has "expressly requested" leave to amend even though its request "was not contained in a properly captioned motion paper." United States ex rel. Willard v. Humana Health Plan, 336 F.3d 375, 387 (5th Cir. 2003). "A formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought." Id.

Campy's Motion to Dismiss and the Verspreeuwen Declaration attached assert that pursuant to applicable Belgian law, Campy has ceased to exist and that "all rights and obligations (including all assets, debts, liabilities and causes of action) of Campy . . . were transferred by operation law to Great World on the date of the silent mergers, i.e., May 22, 2026."[61] DTA does not dispute that Campy has ceased to exist, and for the reasons stated in § II.B.3, above, the court has concluded that DTA's request for jurisdictional discovery should be granted, and that Campy's Motion

[59]Campy's Reply, Docket Entry No. 149, p. 18.

[60]Id. at 19.

[61]Verspreeuwen Declaration, Docket Entry No. 130, p. 4 ¶ 27.

to Dismiss for lack of personal jurisdiction should be denied without prejudice. For these reasons the court concludes that DTA's request to amend to substitute or join Campy's successor, Great World, should be granted.

## II. <u>Conclusions and Order</u>

For the reasons stated in § II.A, above, the court concludes that claims asserted against Campy are not subject to dismissal for failure to effect proper service in compliance with the Hague Convention. For the reasons stated in § II.B, above, the court concludes that the claims asserted against Campy are not subject to dismissal for lack of personal jurisdiction, and that DTA's request to engage in additional discovery targeted to the issue of personal jurisdiction should be granted. For the reasons stated in § II.C, above, the court concludes that the claims asserted against Campy are not subject to dismissal for Campy's lack of capacity to be sued. For the reasons stated in § II.D, above, the court concludes that DTA's request to amend its pleadings to substitute or join Campy's successor, Great World, should be granted.

Defendant Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim, Docket Entry No. 127, is **DENIED WITHOUT PREJUDICE.**

Plaintiff DTA's requests to amend its pleadings to substitute or join Campy's successor, Great World, and to engage in additional

discovery targeted to personal jurisdiction made in DT America Corporation's Opposition to Defendant Campy BV's Motion to Dismiss for Lack of Personal Jurisdiction, Insufficient Service of Process, and Failure to State a Claim, Docket Entry No. 144, are **GRANTED**.

**SIGNED** at Houston, Texas, this 10th day of November, 2026.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE